# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

### Houston Division

| | | |
|---|---|---|
| AL RUSHAID PARKER DRILLING LIMITED, a Saudi Arabian Company, and AL RUSHAID PETROLEUM INVESTMENT CORPORATION, a Saudi Arabian Corporation, | § § § § § § | CASE No.: |
| Plaintiffs, | § § | |
| vs. | § § | |
| TEXAS INTERNATIONAL OILFIELD TOOLS, LTD., a Texas Limited Partnership, | § § § § | |
| Defendant. | § § | |

## COMPLAINT

Plaintiffs, AL RUSHAID PARKER DRILLING LIMITED ("ARPD"), a Saudi Arabian Company, and AL RUSHAID PETROLEUM INVESTMENT CORPORATION ("ARPIC"), a Saudi Arabian Corporation, (collectively Plaintiffs or "Al Rushaid") sue Defendant, TEXAS INTERNATIONAL OILFIELD TOOLS, LTD. ("Texas International"), a Texas Limited Partnership, and allege:

## NATURE OF THE CASE AND THE PARTIES

1. This is an action against Texas International for its breach of a Confidential Settlement Agreement ("Agreement") entered into between Texas International, ARPD, and ARPIC on October 19, 2010. (A copy of the Agreement is attached hereto under Tab A.) It seeks damages for that breach or, in the alternative,

rescission of the Agreement and damages for Texas International's underlying fraudulent and tortious conduct.

2. Plaintiff, ARPD, is a company organized and existing under the laws of the Kingdom of Saudi Arabia, with its principal place of business in Al Khobar, Kingdom of Saudi Arabia. ARPD is wholly owned by Plaintiff, ARPIC.

3. Plaintiff, ARPIC, is a corporation organized and existing under the laws of the Kingdom of Saudi Arabia, with its principal place of business in Al Khobar, Kingdom of Saudi Arabia.

4. On information and belief, Defendant, Texas International, is a limited partnership that is organized under the laws of the State of Texas, with its principal place of business in Houston, Harris County, Texas.

## JURISDICTION AND VENUE

5. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs. The Court has jurisdiction under 28 U.S.C. § 1332.

6. Venue is proper in this Court under 28 U.S.C. § 1391(a). Defendant, Texas International, upon information and belief, resides in the Southern District of Texas, and a substantial part of the events and omissions giving rise to this action occurred in the Southern District of Texas, specifically in Harris County, Texas.

## COMMON ALLEGATIONS

7. Beginning in 2006 and continuing until 2008, Texas International made secret "commission" payments to James Wight ("Wight"), a former employee of ARPD, in exchange for Wight causing ARPD to purchase approximately $10 million in oilfield

tools and equipment from Texas International. These "commissions" were in fact unlawful bribes.

8.    In so doing, Texas International charged ARPD inflated prices for the oilfield tools and equipment that ARPD purchased, causing substantial damages to ARPD. Much of those tools and equipment that Texas International sold to ARPD were also substandard, defective, and late in delivery, and, as a result, ARPD suffered delays in constructing various oil rigs in Saudi Arabia and was required to pay substantial liquidated damages for failing to meet construction deadlines. In addition to the liabilities for liquidated damages, ARPD suffered commercial losses arising from Texas International's defective and untimely performance.

9.    In October 2010, representatives of Al Rushaid, in a good faith attempt to settle the parties' disputes, met with representatives of Texas International. Those settlement discussions resulted in the parties entering into the Agreement on October 19, 2010.

10.    Pursuant to the Agreement, the parties agreed to settle, "in good faith," their disputes in exchange for Al Rushaid receiving the sum of $7 million. Agreement § 2. *See also* Recitals to the Agreement. Of that $7 million, Texas International agreed to pay $1.5 million upon execution of the Agreement and the parties further agreed to use their "best efforts" to form a joint venture under which Al Rushaid would receive a preferential aggregate distribution of an additional $5.5 million within 36 months. *Id.* at § 2. Also, pursuant to the Agreement, the parties exchanged mutual releases, with the release provided by Texas International effective upon the parties' execution of the Agreement. *Id.* at §§ 3-4. The parties further agreed that they "shall refrain from

3

expressing or causing others to express to any person or entity any derogatory or negative opinions or statements concerning the other party or its affiliates . . . or concerning the other party's business or management . . . ." *Id.* at § 6.

11.     Unbeknownst to Al Rushaid, and during the parties' negotiations of the Agreement, Texas International sued ARPD in Texas state court (the "Texas action"). Turning the facts on their head, Texas International alleged, among other things, that ARPD had negligently failed to supervise Wight, who Texas International claimed committed wrongful and fraudulent acts against it. (The complaint in the Texas action is attached hereto under Tab B.) Texas International further alleged that ARPD was vicarously liable for the supposed frauds committed against it.

12.     Texas International failed to disclose that it had filed the Texas action against ARPD during the parties' negotiations of the Agreement or upon the parties' execution of the Agreement. Rather, Texas International, by and through its representatives, made affirmative statements that it planned to bring an action against Wight in the future and, accordingly, Texas International insisted that Al Rushaid agree to carve out Wight from the releases that Texas International provided in the Agreement. *See* Agreement § 4. In so doing, Texas International's statements and actions intentionally misled Al Rushaid to believe that no action was then pending against ARPD.

13.     Texas International also did not disclose the existence of the Texas action to Al Rushaid following the parties' execution of the Agreement on October 19, 2010. Instead, on October 20, 2010, counsel for Texas International met with representatives of

Al Rushaid and requested information and documents concerning its purported future action against Wight.

14. Then, on October 21, 2010, Al Rushaid discovered the existence of the Texas action when an internet article was published by *The Houston Chronicle* and Chron.com reporting that action. (A copy of the internet article is attached hereto under Tab C.) Thereafter, Texas International admitted that it had filed the Texas action against ARPD and said it had filed a notice of non-suit of ARPD on October 20, 2010, that is, a day after the parties had executed the Agreement.

15. Thus, while Texas International had agreed on October 19, 2010 that it was settling the parties' disputes in good faith and had further agreed to use its best efforts to form a joint venture with Al Rushaid, to release Al Rushaid from all claims upon execution of the Agreement, and to refrain from expressing or causing others to express to any person or entity any derogatory or negative opinions or statements concerning ARPD, Texas International had filed, and allowed to remain pending, the Texas action against ARPD, which action was then published throughout the world over the internet. Thus, Texas International knew, before executing the Agreement, that it could not and would not perform several of its material terms, and immediately upon executing the Agreement, Texas International was in material breach of the Agreement.

16. All conditions precedent to this action have been performed, have occurred, or have been waived.

17. Pursuant to section 10 of the Agreement, Plaintiffs are entitled to an award of reasonable attorney's fees and costs in this action.

5

## COUNT I – BREACH OF SETTLEMENT AGREEMENT (DAMAGES)

18.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 17 hereof as though fully set forth herein.

19.    The Agreement constitutes a valid contract between Al Rushaid and Texas International.

20.    Al Rushaid has performed or tendered its performance under the Agreement.

21.    Texas International breached the Agreement when it filed the Texas action against ARPD during the parties' negotiation of the Agreement, failed to notify Al Rushaid that it had filed the Texas action against ARPD, intentionally misled Al Rushaid to believe that no action was pending, and allowed the Texas action to remain pending against ARPD following the parties' execution of the Agreement on October 19, 2010, failing to non-suit its action against ARPD until October 20, 2010.

22.    Texas International further breached the Agreement because it made derogatory and negative statements concerning ARPD, because Texas International, by and through its complaint in the Texas action, caused those statements to remain pending in the public record following the parties' execution of the Agreement, and because Texas International's intentional conduct caused the worldwide publication of the Texas action following the parties' execution of the Agreement.

23.    Texas International's conduct constitutes breach of its agreement to settle in good faith the parties' disputes, to release ARPD from all claims, and to refrain from making derogatory or negative statements concerning ARPD, all as set forth in the Agreement.  Additionally, Texas International's misleading conduct and its immediate,

intentional, and material breaches of the Agreement, demonstrate that it lacks the integrity and business ethics necessary to form a joint venture and constitute a breach of Texas International's agreement to use its best efforts to form a joint venture.

24.     Texas International's breach of the Agreement has caused Al Rushaid substantial damages, including the loss of the $5.5 million preferential distribution that it was to receive under the parties' joint venture, additional profits from that joint venture, and damages to its business reputation.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Final Judgment in their favor and against Defendant, Texas International, for Plaintiffs' actual, compensatory, consequential, and incidental damages, together with prejudgment interest, attorney's fees and costs, and such other and further relief as this Court deems just, appropriate and necessary.

### COUNT II – RESCISSION
### (pled in the alternative to Count I)

25.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 17 hereof as though fully set forth herein.

26.     In the alternative to its claim for breach of the Agreement under Count I, Plaintiffs seek rescission of the Agreement and to bring claims against Texas International for the underlying fraudulent and tortious conduct that the Agreement was intended to resolve.

27.     Texas International fraudulently induced Al Rushaid to enter into the Agreement, making material misrepresentations to representatives of Al Rushaid during the course of negotiations of the Agreement that it planned to bring an action against

Wight in the future, when Texas International had already commenced the Texas action against Wight and ARPD.

28.     In particular, on October 19, 2010, and prior to the execution of the Agreement, counsel for Texas International affirmatively stated to representatives of Al Rushaid that Texas International planned to bring an action against Wight in the future and, accordingly, demanded that he be carved out of the releases provided by Al Rushaid in the Agreement.

29.     Texas International's representations that it planned to bring an action against Wight after execution of Agreement were false and known by Texas International to be false at the time that they were made.

30.     By making its misrepresentation that it planned to sue Wight following the execution of the Agreement, Texas International purposely misled Al Rushaid to believe that no action had been filed by Texas International against ARPD.

31.     Al     Rushaid     justifiably     relied     upon     Texas     International's misrepresentations to enter into the Agreement.

32.     Alternatively, Al Rushaid is entitled to rescission of the Agreement on grounds of mistake.

33.     Al Rushaid reasonably believed that no action was pending against ARPD at the time the parties executed the Agreement and it would be unconscionable to permit Texas International to require that Al Rushaid fulfill its obligations under the Agreement.

34.     Al Rushaid's mistake relates to material features of the Agreement, including the Agreement's recital that the parties were desiring to settle their disputes in good faith, the parties' agreement to use their best efforts to form a joint venture, the

releases provided by Al Rushaid to Texas International, and the non-disparagement section contained in the Agreement.

35. Al Rushaid's mistake occurred despite the exercise of ordinary care by Al Rushaid.

36. The parties can also be placed in the status quo prior to the Agreement and Texas International will not be prejudiced thereby other than loss of its bargain under the Agreement.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Final Judgment rescinding the Agreement and awarding Al Rushaid its attorney's fees and costs in this action, and such other and further relief as this Court deems just, appropriate and necessary.

## COUNT III – FRAUD
### (pled in the alternative to Count I)

37. Plaintiff, ARPD, repeats and realleges the allegations contained in paragraphs 1 through 17 and paragraphs 25 through 36 hereof as though fully set forth herein.

38. This is a claim by ARPD for fraud arising from Texas International's sale of approximately $10 million in oilfield tools and equipment to ARPD.

39. In connection with each sale of oilfield tools and equipment, Texas International made material misrepresentations concerning the price and quality of the oilfield tools and equipment it sold to ARPD. Texas International also failed to disclose material facts to ARPD, including the fact that it was paying "commissions" to Wight upon each sale of oilfield tools and equipment to ARPD. (The invoice numbers, the purported descriptions of the oilfield tools and equipment that Texas International sold to

ARPD, the dates of sale, and the price paid by ARPD are contained in the spreadsheet attached hereto under Tab D.)

40.     Texas International's representations concerning the price and quality of the oilfield tools and equipment it sold to ARPD were false and known by Texas International to be false at the time that they were made as, among other things, the price charged by Texas International to ARPD was inflated to take into account the "commissions" paid to Wight and Texas International knew that oilfield tools and equipment it sold to ARPD were, in many instances, substandard and defective.

41.     ARPD justifiably relied upon Texas International's misrepresentations when purchasing the oilfield tools and equipment from Texas International.

42.     Further, in consideration of the bribes that Texas International paid to Wight, Wight caused the ARPD employees responsible for inspecting the oilfield tools and equipment to accept defective oilfield tools and equipment, depriving ARPD of the opportunity to detect Texas International's defective performance and fraud.

43.     Texas International's fraud has caused ARPD substantial damages, including the payment of inflated prices, losses from construction delays, and the payment of liquidated damages as a result of such construction delays and the failure to meet construction deadlines.

WHEREFORE, Plaintiff, ARPD, respectfully requests that the Court enter a Final Judgment in its favor and against Defendant, Texas International, for its actual, compensatory, consequential, and incidental damages, together with prejudgment interest, attorney's fees and costs, and exemplary and punitive damages, rescission of the

purchase orders and return of the purchase money paid by ARPD, and such other and further relief as this Court deems just, appropriate and necessary.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (pled in the alternative to Count I)

44.     Plaintiff, ARPD, repeats and realleges the allegations contained in paragraphs 1 through 17 and paragraphs 25 through 43 hereof as though fully set forth herein.

45.     This is a claim by ARPD against Texas International for aiding and abetting Wight's breach of fiduciary duty.

46.     Wight, as an employee of ARPD, and ARPD had a fiduciary relationship under which ARPD reposed trust and confidence in Wight, which Wight accepted, and Wight owed ARPD duties of loyalty and care.

47.     Texas International knew that Wight and ARPD had a fiduciary relationship.

48.     Wight breached that fiduciary relationship when he accepted payments from Texas International in connection with Texas International's sale of oilfield tools and equipment to ARPD. Wight further breached the fiduciary relationship when he accepted or caused others to accept delivery of oilfield tools and equipment that Wight knew to be substandard and defective.

49.     Texas International was aware that its was participating in the breach of Wight's fiduciary relationship with ARPD when it made payments to Wight in connection with Texas International's sale of oilfield tools and equipment to ARPD.

50.     As a result of Texas International aiding and abetting Wight's breach of fiduciary duty, ARPD has suffered substantial damages, including the payment of

11

inflated prices to Texas International, losses from construction delays, and the payment of liquidated damages as a result of such construction delays and the failure to meet construction deadlines.

WHEREFORE, Plaintiff, ARPD, respectfully requests that the Court enter a Final Judgment in its favor and against Defendant, Texas International, for its actual, compensatory, consequential, and incidental damages, together with prejudgment interest, attorney's fees and costs, and exemplary and punitive damages, rescission of the purchase orders and return of the purchase money paid by ARPD, and such other and further relief as this Court deems just, appropriate and necessary.

## COUNT V – CIVIL CONSPIRACY
### (pled in the alternative to Count I)

51.     Plaintiff, ARPD, repeats and realleges the allegations contained in paragraphs 1 through 17 and paragraphs 25 through 50 hereof as though fully set forth herein.

52.     This is a claim by ARPD against Texas International for civil conspiracy.

53.     Texas International and Wight entered into an agreement to defraud ARPD and to cause ARPD to purchase oilfield tools and equipment through fraudulent means and in breach of Wight's fiduciary duties to ARPD.

54.     The object of the conspiracy was to cause ARPD to purchase oilfield tools and equipment from Texas International to enrich Texas International and Wight.

55.     Texas International and Wight had a meeting of the minds on the object and course of action of the conspiracy agreeing that Wight would cause ARPD to purchase oilfield tools and equipment from Texas International at inflated prices, and that Wight would accept or cause others to accept delivery of defective and substandard

oilfield tools and services, in exchange for Texas International making payments to Wight upon each sale.

56.     Texas International and Wight committed numerous overt acts in furtherance of the conspiracy, including each sale of oilfield tools and equipment to ARPD and each corresponding payment to Wight.

57.     As a proximate result of the conspiracy entered into by Texas International and Wight, ARPD has suffered substantial damages, including the payment of inflated prices to Texas International, losses from construction delays, and the payment of liquidated damages as a result of such construction delays and the failure to meet construction deadlines.

WHEREFORE, Plaintiff, ARPD, respectfully requests that the Court enter a Final Judgment in its favor and against Defendant, Texas International, for its actual, compensatory, consequential, and incidental damages, together with prejudgment interest, attorney's fees and costs, and exemplary and punitive damages, rescission of the purchase orders and return of the purchase money paid by ARPD, and such other and further relief as this Court deems just, appropriate and necessary.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

58.     Plaintiffs demand a trial by jury on all issues so triable of right by a jury.

DATED: October 28th, 2010

Respectfully submitted,

H. Eugene Lindsey, Esq.
(*Pro Hac Vice* motion submitted herewith)
Florida Bar No. 0130338
Katz Barron Squitero Faust
2699 S. Bayshore Drive, Seventh Floor
Miami, Florida 33133
Telephone: 305-856-2444
Facsimile: 305-285-9227
hel@katzbarron.com

Local Counsel:

Larry D. Knippa
Attorney at Law
Attorney for Plaintiffs
Fed. ID 2450
3121 Buffalo Speedway No. 8109
Houston, Texas 77098
Telephone: 713-622-7940
Facsimile: 713-622-7522
lknippa@earthlink.net

<u>CONFIDENTIAL SETTLEMENT AGREEMENT</u>

THIS CONFIDENTIAL SETTLEMENT AGREEMENT (the "Agreement") is made as of the 19th day of

October, 2010 (the "Effective Date").

<u>PARTIES</u>

*Limited*

The parties to this Agreement are Texas International Oilfield Tools, Ltd., 13627 West Hardy, Houston,

Texas 77060 ("Texas International") and Al Rushaid Parker Drilling and Al Rushaid Petroleum Investment

Corporation, P.O. Box 31685, Al Khobar 31952, Kingdom of Saudi Arabia (Al Rushaid Parker Drilling and Al

Rushaid Petroleum Investment Corporation shall be collectively referred to herein as the "Al Rushaid" and all

parties to this Agreement shall be collectively referred to as the "Settling Parties").

<u>RECITALS</u>

WHEREAS, Texas International and Al Rushaid have and continue to conduct business with each other;

WHEREAS, certain disputes have arisen between Texas International and Al Rushaid concerning their past

business dealings; and

WHEREAS, the Settling Parties desire to settle, in good faith, those disputes and resolve all claims that

could arise from those disputes and avoid the expense, uncertainty and distraction that could be created by litigation.

<u>COVENANTS</u>

NOW THEREFORE, in consideration of $10.00 and other good and valuable consideration, the receipt and

sufficiency of which are hereby acknowledged, the Settling Parties, intending to be legally bound, agree as follows:

1.        The foregoing Recitals above are incorporated herein and the Settling Parties acknowledge and

agree that they are true and correct. In order to settle and compromise the claims released in the Agreement, the

Settling Parties agree as follows:

2.        Texas International has paid to Al Rushaid, by check payable to the order of Rasheed A.R. Al

Rushaid, the total sum of One Million Five Hundred Thousand ($1,500,000.00) upon the execution of this

Agreement by all Settling Parties (the "Settlement Sum"), the receipt and sufficiency of which is acknowledged by

Al Rushaid. The Settling Parties shall use their best efforts to form a joint venture, the terms of which shall be

negotiated in a separate document. Ownership of such joint venture shall be by Texas International, or its affiliate,

and by Al Rushaid, or its affiliate. Al Rushaid, or its affiliate, shall contribute the land and buildings necessary to

effectuate the business of the joint venture in the Kingdom of Saudi Arabia. The joint venture's distributions shall

**EXHIBIT**
**A**

be made as follows: a preferred distribution to Al Rushaid, or its affiliate, and the balance to Texas International, or its affiliate, until such time as the aggregate distributions to Al Rushaid, or its affiliate, equals Five Million Five Hundred Thousand Dollars ($5,500,000.00), or its equivalent; the Settling Parties having agreed to use their best efforts to achieve the aggregate distribution of Five Million Five Hundred Thousand Dollars ($5,500,000.00) to Al Rushaid within thirty six months of the formation of the joint venture.

3.     Upon the payment of the Settlement Sum, the Al Rushaid, for itself and its assigns and successors, together with all of its affiliated persons or entities, (individually or collectively referred to in this Section as the "Al Rushaid Releasors") shall remise, release, acquit, satisfy and forever discharge Texas International, together with all of its affiliated persons or entities including, but not limited to, its past and present officers, directors, shareholders, members, managers, general partners, limited partners, employees, agents, representatives, legal representatives, liability insurers, sureties, owners, affiliates, parents, subsidiaries, predecessors, successors and assigns (individually or collectively referred to in this Section as the "Texas International Releasees"), of and from any and all liability, actions, causes of action, suits, claims, debts, accounts, agreements, damages, judgments, executions and demands whatsoever, in law or in equity, which the Al Rushaid Releasors had, have or may have against the Texas International Releasees, whether known or unknown, from the beginning of the world to the date of these presents except the terms of this section shall not release, discharge or affect any duty, obligation, right or undertaking of the Texas International Releasees as set forth in this Agreement.

4.     Texas International, for itself and its assigns and successors, together with all of its affiliated persons or entities, including, but not limited to, its past and present officers, directors, shareholders, members, managers, general partners, limited partners, employees, agents, representatives, legal representatives, liability insurers, sureties, owners, affiliates, parents, subsidiaries, predecessors, successors and assigns ( the foregoing, individually or collectively referred to in this Section as the "Texas International Releasors") shall remise, release, acquit, satisfy and forever discharge the Al Rushaid, together with all of their affiliated persons or entities including, but not limited to, its past and present officers, directors, shareholders, members, managers, general partners, limited partners, employees, agents, representatives, legal representatives, liability insurers, sureties, owners, affiliates, parents, subsidiaries, predecessors, successors and assigns, except the Settling Parties agree that James Wight, a former employee of the Al Rushaid, shall not be released hereby and the Settling Parties agree that Texas International shall retain all claims against James Wight (the foregoing individually or collectively (except for James



Wight) referred to in this Section as the "Al Rushaid Releasees"), of and from any and all liability, actions, causes of action, suits, claims, debts, accounts, agreements, damages, judgments, executions and demands whatsoever, in law or in equity, which the Texas Interntional Releasors had, have or may have against the Al Rushaid Releasees, whether known or unknown, from the beginning of the world to the date of these presents except the terms of this section shall not release, discharge or affect any duty, obligation, right or undertaking of the Al Rushaid Releasees as set forth in this Agreement. The Settling Parties expressly agree that Texas International shall retain all claims against James Wight. To the extent appropriate to pursue claims against James Wight, the Settling Parties shall enter into a Joint Interest Agreement in conformity with state and federal law.

5.     The Settling Parties, together with her heirs, successors, assigns, representatives, agents and attorneys, hereby covenant and agree that this Agreement shall be kept confidential and not disclosed to any person or entity, except as may be necessary to any accountants or attorneys or as may be compelled by a Court Order. Notwithstanding the foregoing, the Settling Parties agree that this Agreement may be used to enforce the terms hereof.

6.     The Settling Parties shall refrain from expressing or causing others to express to any person or entity any derogatory or negative opinions or statements concerning the other party or its affiliates officers, directors, managers, members, shareholders, owners, agents, employees, attorneys and insurers or concerning the other party's business or management, unless compelled to provide testimony pursuant to a Court Order. This paragraph does not include pleadings or testimony under oath given in connection with any enforcement of this Agreement.

7.     Nothing contained in this Agreement shall be deemed to be an admission of any liability or wrongdoing by any of the Settling Parties.

8.     This Agreement can be executed in counterparts each of which shall constitute an original and all of which taken together shall constitute one agreement. Evidence of this Agreement may be furnished by facsimile copy thereof.

9.     Should any provision of this Agreement require judicial interpretation, it is agreed that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same.



10.    In any proceeding to enforce and/or seek relief for breach of this Agreement the prevailing party shall be entitled to its reasonable attorneys' fees and costs.

11.    If any provision of this Agreement is found to be unenforceable, all other remaining provisions shall remain in full force and effect.

12.    The Settling Parties acknowledge that they have reviewed this Agreement and have had the opportunity to obtain advice of counsel of their choice prior to executing this Agreement.

13.    This Agreement contains the entire agreement among the Settling Parties, supersedes any and all prior agreements and understandings relating to the substance hereof between and among any of the Settling Parties hereto, and may not be altered, modified or amended, or any of its provisions waived, unless by a writing, executed by all of the Settling Parties hereto.

14.    Except as expressly stated herein, all rights, powers, options or remedies afforded to any Settling Party either hereunder or by law shall be cumulative and not alternative and the exercise of one right, power, option or remedy allowed herein or by law shall not preclude the exercise of another or subsequent exercise of such right, power, option or remedy.

15.    This Agreement shall be binding upon and inure to the benefit of the respective Settling Parties' heirs, personal representatives, successors and assigns.

The Settling Parties have executed this Agreement as of the Effective Date.

**Agreed to and accepted on behalf of**
**Texas International Oilfield Tools, Ltd.**

By: _____
Name: _Stephen J Edwards_
Title: _Member_
Date: _12/19/10_

**Agreed to and accepted on behalf of**
**Al Rushaid Parker Drilling** _Limited_

By: _____
Name: _Rasheed A R AlRushaid_
Title: _President_

Date: _Oct, 19, 2010_

**Agreed to and accepted on behalf of**
**Al Rushaid Petroleum Investment Corporation**

By: _____

Name: _Rashed A R AlRushaid_

Title: _President_

Date: _Oct, 19, 2010_

**FILED**
Loren Jackson
District Clerk

OCT 1 9 2010

Time: _____
Harris County, Texas

By _____
Deputy

NO. **2 0 1 0   6 9 0 8 3**

| | | |
|---|---|---|
| TEXAS INTERNATIONAL OILFIELD TOOLS, LTD. | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFF | § § | |
| v. | § § | |
| JAMES WIGHT, JOY DRILLING AND ENGINEERING LTD., AND AL-RUSHAID PARKER DRILLING LIMITED, | § § § § § § | HARRIS COUNTY, TEXAS |
| DEFENDANTS | § § | _333_ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

### A. DISCOVERY-CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 2 pursuant to Texas Rule of Civil Procedure 190.3 and affirmatively pleads that it seeks monetary relief aggregating more than $50,000.

### B. PARTIES

2.      Plaintiff Texas International Oilfield Tools, Ltd. ("Plaintiff") is a limited partnership that is organized under the laws of the State of Texas and does business in Harris County, Texas.

3.      Defendant James Wight ("Wight"), an individual who has engaged in business in Harris County, Texas, may, upon information and belief, be served with process by service at his address of Scotia Centre, 4th Floor P.O. Box 268, Grand Cayman, KY1-11-4, Cayman Islands, because Wight has done business in the state of Texas, the lawsuit arises from Wight's business in Texas, and upon information and belief Wight is not a resident of the county where the suit arose.

4.      Defendant Joy Drilling and Engineering Ltd. ("Joy"), a foreign corporation whose principal office is located at, upon information and belief, Scotia Centre, 4th Floor P.O. Box 268,



EXHIBIT
B

Grand Cayman, KY1-11-4, Cayman Islands, and may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Joy has engaged in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Joy's business in Texas.

5.     Defendant Al-Rushaid Parker Drilling Limited ("ARPD"), upon information and belief a joint venture company organized and existing under the laws of Saudi Arabia whose principal office is located at, upon information and belief, P.O. Box 31685, Al Khobar-31952, Kingdom of Saudi Arabia, may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant has engaged in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant's business in Texas; alternatively, ARPD may be served with process by serving its joint venture partner Abdula Rasheed Al-Rushaid Company for Drilling Oil and Gas Limited, by serving its President Rasheed Al-Rushaid by personal delivery of a copy of the citation with this Petition attached, pursuant to Texas Rules of Civil Procedure 106 and 108, at the St. Regis Hotel, 919 Briar Oaks Lane, Houston, Texas.

## C. JURISDICTION

6.     This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

7.     This Court has jurisdiction over Defendant Wight because Wight purposefully availed himself of the privileges and benefits of conducting business in Texas by engaging in a business relationship in Texas with Plaintiff, through which Wight received commission payments by representing himself and Defendant Joy (collectively, the "Wight Defendants") as a broker with regard to sales of oilfield tools and equipment from Plaintiff to ARPD. Wight's wrongful and

fraudulent acts in the course of this business relationship gave rise to this suit. Specifically, Wight knowingly and willfully misrepresented the Wight Defendants as an independent broker entitled to commissions when, according to recent statements by ARPD, Wight was in fact an employee and agent of ARPD at all relevant times, and thus fraudulently caused Plaintiff to pay the Wight Defendants commissions to which they were not entitled.

8.      This Court has jurisdiction over Defendant Joy because Joy purposefully availed itself of the privileges and benefits of conducting business in Texas by engaging in a business relationship in Texas with Plaintiff, through which the Wight Defendants received commission payments for acting as a broker with regard to sales of oilfield tools and equipment from Plaintiff to ARPD. The Wight Defendants' wrongful and fraudulent acts in the course of this business relationship gave rise to this suit. Specifically, the Wight Defendants knowingly and willfully represented that they were an independent broker entitled to commissions, when in fact according to recent statements by ARPD, the Wight Defendants were not authorized to act as a broker on the transaction between Plaintiff and ARPD, and thus fraudulently caused Plaintiff to pay the Wight Defendants commissions to which they were not entitled.

9.      This Court has jurisdiction over Defendant ARPD because it purposefully availed itself of the privileges and benefits of conducting business in Texas by engaging in a contractual relationship in Texas with Plaintiff, through which it purchased approximately $10 million in oilfield tools and equipment from Plaintiff pursuant to a sales contract that provided that the county of performance was to be Harris County Texas. The conduct of ARPD's agents, including Wight, as set forth in this Complaint gave rise to this suit. In addition, this Court has jurisdiction of ARPD because Defendant Wight, as an agent of ARPD, fraudulently induced Plaintiff to pay commissions that it did not owe.

## D. VENUE

10.     Venue for this suit is permissive in Harris County under Texas Civil Practice and Remedies Code Section 15.035(a) because Harris County was named in the contract of sale between Plaintiff and ARPD as the county of performance for any and all obligations, agreements, and covenants arising under the contract, and this suit for breach of contract and fraud arises out of and is otherwise related to that contract.

11.     Venue for this suit is permissive in Harris County under Texas Civil Practice and Remedies Code Section 15.002(a) because the fraud alleged in this action was perpetrated in all or substantial part in Harris County, Texas.

## E.     FACTS

12.     On February 15, 2006, Parker Drilling Co. and Abdula Rasheed Al-Rushaid Company for Drilling Oil and Gas Limited announced the formation of the joint venture company ARPD.

13.     ARPD entered into multiple sales contracts with Plaintiff for the purchase of oilfield tools and equipment. In connection with each of these sales, Plaintiff paid a commission to the Wight Defendants.

14.     From 2006 through 2008, ARPD purchased approximately $10 million (ten million dollars) in oilfield tools and equipment from Plaintiff. For each of these transactions, Plaintiff paid to the Wight Defendants, as a consulting fee, a commission from the payments received from ARPD.

15.     Each of these sales were made subject to the terms, conditions, covenants, and agreements set forth on Plaintiff's Invoices and Sales Contracts, which state in pertinent part that:

> 3. Purchaser will pay the purchase price secured by the security agreement in accordance with the terms as stated in this contract on page 1.

> 4. Upon default of payment, Seller may proceed to enforce payment and exercise any and all of the rights and remedies provided by the Uniform Commercial Code . . . . The County of performance for any and all obligations, agreements, and covenants arising under this contract of Sale is Harris County, Texas. . . .

16.    In October 2010, ARPD represented to Plaintiff that Wight was at all relevant times a senior employee and agent of ARPD, and that he had no authorization to act as a broker or to retain commissions for his services.

17.    The payments Plaintiff was required to make, and did make, to ARPD's agent reduced the amount of money Plaintiff received from the sales to ARPD.

## F. COUNT I—BREACH OF CONTRACT

18.    Plaintiff and ARPD entered into valid and enforceable sales contracts for the sale and purchase of oilfield tools and equipment. Under the terms of those contracts, ARPD agreed to pay the purchase price specified by the contracts and/or invoices.

19.    Plaintiff performed its contractual obligations by delivering the goods as required.

20.    The Wight Defendants represented to Plaintiff that they were authorized to act as broker on the sales to ARPD. According to recent statements of ARPD, the Wight Defendants had no such authority.

21.    Plaintiff seeks actual damages, general and special, in the amount of all commissions paid by Plaintiff to the Wight Defendants, an amount within the jurisdictional limits of this Court.

## G.    COUNT II—FRAUD/FRAUDULENT INDUCEMENT

22.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

23.    The Wight Defendants committed fraud by knowingly and willfully misrepresenting to Plaintiff that they were authorized to act as an independent broker entitled to receive

commissions for facilitating Plaintiff's sales of oilfield tools and equipment to ARPD, when in fact, according to recent statements of ARPD, they had no such authority and Wight was a senior employee and agent of ARPD. By making these fraudulent statements, the Wight Defendants fraudulently induced Plaintiff to pay them commissions to which they were not entitled.

24.     Plaintiff seeks actual damages, general and special, in the amount of all commissions paid by Plaintiff to the Wight Defendants, and exemplary and punitive damages in the maximum amount determined appropriate by this Court, an amount within the jurisdictional limits of this Court.

## H. COUNT III—LIABILITY OF ARPD

25.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

26.     According to recent statements of ARPD, at all times relevant to this suit, Wight was a senior employee and agent of ARPD. Wight's wrongful and fraudulent actions as a senior employee and agent of ARPD were the direct and proximate cause of Plaintiff's injuries. ARPD is therefore liable to Plaintiff for its negligent failure to adequately supervise its employees, including Wight. Alternatively, ARPD is vicariously liable for Wight's wrongful and fraudulent acts. In addition, to the extent ARPD has received or shall receive any portion of the commission paid to the Wight Defendants, Plaintiff is entitled to judgment that ARPD turn over the funds to Plaintiff.

## I. JURY TRIAL REQUESTED

27.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## J. CONDITIONS PRECEDENT

28.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## K. REQUEST FOR DISCLOSURE

29.    Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## L. PRAYER

30.    For these reasons, Plaintiff respectfully requests that the Court issue citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

    a.    Actual damages;

    b.    Prejudgment and post-judgment interest as allowed by law;

    c.    Reasonable attorney's fees;

    d.    Exemplary and punitive damages;

    e.    Costs of suit; and

    f.    Any and all other relief the Court deems appropriate.


Respectfully submitted,

MAYER BROWN LLP

By: _Mark D. Manela_

Mark D. Manela
State Bar No. 12894500
Jessica L. Crutcher
Texas Bar No. 24055367

700 Louisiana, Suite 3400
Houston, Texas 77002
(713) 238-2645 (Telephone)
(713) 238-4645 (Facsimile)

COUNSEL FOR PLAINTIFF TEXAS
INTERNATIONAL OILFIELD TOOLS, LTD.

24697227


Login | Register

Oct 22, 2010  | **Hot Topics:** Sports | Real Estate | Courts | Events | crime

Search       Search

ultimate
**Aldine** Beta



- Home
- Crime
- Courts
- Politics
- Sports
- Real Estate
- Most Popular



**Deals for Oct 22 :** Receive 4 Mortgage Quotes Fast | Sign up to access Houston foreclosures! | Lower your monthly payments | Refinance today! Free quote!

Home » News » Courts

# Aldine company sues broker

- Tell a friend
- Like
- **0** tweet

**by** Joey Ciamacco **published** October 21, 2010 7:32 am

An Aldine business is suing a company for commissions paid to an independent broker who claimed to represent the company.

Texas International Oilfield Tools Ltd. is suing James Wight, Joy Drilling and Engineering Ltd., and Al-Rushaid Parker Drilling Limited to recover commissions they say was collected through fraud by Wight.

Al-Rushaid Parker Drilling Limited, of Saudi Arabia, entered into multiple sales contracts with the plaintiff for the purchase of oilfield tools and equipment in 2006.  Through 2008, ARPD purchased approximately $10 million in tools and equipment.  For each of these transactions, the plaintiff paid Wight a consulting fee, which was commission from the payments received from ARPD.

In Oct. 2010, ARPD represented to the Plaintiff that Wight was at all times a senior employee and agent of

ARPD, and that he was not authorized to act as a broker or to retain commissions for his service.

The suit, filed in the 333rd District of the Harris County Court on Oct. 19, seeks to recoup the commissions the Plaintiff paid to Wight.

*This is a report on a civil lawsuit filed at the Harris County Courthouse. The details in this report come from an original complaint filed by a plaintiff. Please note, a complaint represents an accusation by a private individual, not the government. It is not an indication of guilt, and it only represents one side of the story.*

**Filed Under:** Courts

# More Aldine Stories

- Football preview: Aldine v. Nimitz published Oct 21, 2010
- Sharonda Marshall named SWAC Player of the Week published Oct 21, 2010
- MacArthur looking for first district win Friday published Oct 21, 2010
- Aldine family sues Wal-Mart published Oct 21, 2010
- Local company takes Chinese manufacturer to court published Oct 21, 2010

- Tell a friend
- Like
- 0 tweet

**Comments:**

**No comments posted.**

Post a comment

# Most Popular Stories

- Couple charged in killings as Houston cabbies' families mourn
- Harris Co. driver flees fender-bender, then flees fatal wreck
- Truck allegedly stolen from Aldine auto repair shop
- White or silver SUV sought in killing in north Harris Co.
- Nimitz grad completes ROTC leadership training



# Sound Off Aldine

**What's on your mind?**



Call **(832) 356-6214**
and leave us a voicemail

# Tag Cloud

Real Estate Sports Courts Events crime Business volleyball Schools Military Doctor Energy Alumni government Politics Lawyer HS football Blogs car accident 2 Weddings Katy HS Meritage Homes volunteerism Police performing arts Real Estate Agent Prudential Gary Greene Realtors Coldwell Banker United robbery Aldine HS Consultancy Education Personette Properties Cy-Fair HS charity soccer Martha Turner Properties drug crime Lamar HS Cy-Creek HS

### Flyerboard



Local Advertising by PaperG



This site is a product of the Houston Chronicle and Chron.com. Send us your news at neighborhoods@chron.com

More Sites · Aldine · Alief · Baytown · Bellaire · Clear Lake · Conroe · Cy-Fair · East End · Fort Bend · Heights · Katy · Kingwood · Lake Houston · Magnolia · Memorial · Montrose · Pasadena · Pearland · Spring · Tomball · West University · The Woodlands

About

| I-No | Company Name | Material Description | Rfg | Amount | Curr | Amount in USD | I Date | Delivery Date | Paid in USD |
|---|---|---|---|---|---|---|---|---|---|
| 06 0023 | Texas International Oilfield Tools Ltd | 2 sets of various handling and fishing tools | 263 | 1391627 | USD | $1,391,627 | 10/20/2006 | 12/31/2006 | $2,783,254 |
| 07 1039 | Texas International Oilfield Tools Ltd | 13-3/40 of k 120 with 7-5/8O: reg series 150 rel (1) | 268 | 765949 | USD | 765,949.00 | 11/5/2007 | 6/30/2008 | $765,949 |
| 07 1038 | Texas International Oilfield Tools Ltd | 13-3/40 of k 120 with 7-5/8O: reg series 150 rel (1) | 267 | 765949 | USD | 765,949.00 | 11/5/2007 | 6/30/2008 | $765,949 |
| 07 1010 | Texas International Oilfield Tools Ltd | 13-3/40 of k 120 with 7-5/8O: series 150 releasi (1) | 265 | 661437 | USD | 661,437.00 | 10/27/2007 | 7/1/2008 | $661,437 |
| 07 1008 | Texas International Oilfield Tools Ltd | 13-3/40 of k 120 with 7-5/8O: series 150 releasi (1) | 266 | 661437 | USD | 661,437.00 | 10/27/2007 | 6/30/2008 | $661,437 |
| 07 1011 | Texas International Oilfield Tools Ltd | weldless links - 2-3/4" x 108" = capacity 350 (pr (1) | 265 | 553619 | USD | 553,619.00 | 10/27/2007 | 5/1/2008 | $553,619 |
| 07 1007 | Texas International Oilfield Tools Ltd | weldless links - 2-3/4" x 108" = capacity 350 (pr (1) | 266 | 553619 | USD | 553,619.00 | 10/27/2007 | 4/30/2008 | $553,619 |
| 07 1009 | Texas International Oilfield Tools Ltd | farr 20" power tong model kt 20000 torque capacity (1) | 265 | 450778.4 | USD | 450,778.40 | 10/27/2007 | 8/14/2008 | $450,776 |
| 07 1006 | Texas International Oilfield Tools Ltd | farr 20" power tong model kt 20000 torque capacity (1) | 266 | 450778.4 | USD | 450,778.40 | 10/27/2007 | 6/25/2008 | $450,776 |
| 07 1036 | Texas International Oilfield Tools Ltd | ssw-40 pipe spinner pneumatic (1) | 268 | 337538 | USD | 337,538.00 | 11/5/2007 | 7/1/2008 | $337,538 |
| 07 1033 | Texas International Oilfield Tools Ltd | weldless links 3-1/2" x 192" cap: 500 tons - new (1) | 268 | 301661 | USD | 301,661.00 | 11/5/2007 | 6/25/2008 | $301,661 |
| 07 1032 | Texas International Oilfield Tools Ltd | weldless links 3-1/2" x 192" cap: 500 tons - new (1) | 267 | 301661 | USD | 301,661.00 | 11/5/2007 | 4/30/2008 | $301,661 |
| 07 1037 | Texas International Oilfield Tools Ltd | farr 200 power tong model kt 20000 torque capacit (1) | 267 | 299310 | USD | 299,310.00 | 11/5/2007 | 3/8/2009 | $299,310 |
| 07 1129 | Texas International Oilfield Tools Ltd | varco ssw-40 spinning wrench (1) | 268 | 202832 | USD | 202,832.00 | 12/17/2007 | 7/1/2008 | $202,832 |
| 07 0902 B | Texas International Oilfield Tools Ltd | hhf-1600 1600hp mud pump skid mounted complete wit (1) | 263 | 170000 | USD | 170,000.00 | 10/21/2007 | 1/19/2009 | $170,000 |
| 07 1128 | Texas International Oilfield Tools Ltd | varco ssw-40 spinning wrench (1) | 267 | 72055 | USD | 72,055.00 | 12/17/2007 | 4/30/2008 | $72,055 |
| 08 1314 REV 1 | Texas International Oilfield Tools Ltd | international style atic kelly spinner air operated (1) | 263 | 17500 | USD | 17,500.00 | 3/22/2008 | 12/2/2008 | $35,000 |
| 08 1313 REV 1 | Texas International Oilfield Tools Ltd | international style atic kelly spinner air operated (1) | 264 | 17500 | USD | 17,500.00 | 3/22/2008 | 12/2/2008 | $35,000 |
| 08 1312 REV 1 | Texas International Oilfield Tools Ltd | international style atic kelly spinner air operated (1) | 266 | 17500 | USD | 17,500.00 | 3/22/2008 | 12/2/2008 | $35,000 |
| 08 1311 REV 1 | Texas International Oilfield Tools Ltd | international style atic kelly spinner air operated (1) | 265 | 17500 | USD | 17,500.00 | 3/22/2008 | 10/15/2008 | $35,000 |
| 07 0064 | Texas International Oilfield Tools Ltd | hydril k-20 5000 # pulsation dampner-rebuilt | 263 | 33000 | USD | $33,000 | 3/1/2007 | 3/31/2007 | $33,000 |
| 07 0955 | Texas International Oilfield Tools Ltd | 132" elevator links 2 3/4" (1) | 267 | 19137 | USD | 19,137.00 | 10/20/2007 | 6/15/2008 | $19,137 |
| 07 0953 | Texas International Oilfield Tools Ltd | 132" elevators links , 2 3/4" (1) | 268 | 19137 | USD | 19,137.00 | 10/20/2007 | 1/11/2008 | $19,137 |
| | | | | | | | | | **$9,543,146** |



EXHIBIT
D